Mr. Bruce G. Duncan Assistant County Attorney Lake County Board of County Commissioners Post Office Box 7800 Tavares, Florida 32778-7800
Dear Mr. Duncan:
On behalf of the Lake County Board of County Commissioners, you ask the following questions:
1. May Lake County use proceeds derived from its tourist development tax revenues for the acquisition of land that will be used by the State of Florida as a site for the Florida Agriculture Museum?
2. May Lake County use proceeds derived from local government infrastructure surtax revenues for the acquisition of land that will be used by the State of Florida as a site for the Florida Agriculture Museum?
3. May Lake County transfer or lease to the state land that is already owned by the county?
In sum:
1. The use of tourist development tax revenues to acquire land within the county that would then be used by the state as the location for the State Agriculture Museum would not violate section 125.0104, Florida Statutes.
2. While the acquisition of land is included within the term "infrastructure" as defined for purposes of section 212.055(2), Florida Statutes, the county must make a determination that such expenditure serves a county purpose, a determination that must be made by the governing body of the county.
3. Section 125.38, Florida Statutes, authorizes the county to lease or sell to the state, for a nominal amount of money, property owned by the county but not needed for county purposes.
Question One
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2]
The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3] The determination, however, as to whether a particular facility or project is tourist related and primarily promotes such a purpose is a factual determination that must be made by the governing body of the county based upon appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs.
Subsection (5) of the act sets forth various purposes for which revenues from the tax may be expended. Pursuant to section125.0104(5)(a)1., such funds may be used:
"To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . ." (e.s.)
Thus, the statute authorizes the use of tourist development tax revenues for a museum. Section 125.0104(5)(a)1., Florida Statutes, does not require that such facility be county-owned but rather recognizes that the facility may be owned and operated by entities other than the county. The statute authorizes, for example, the use of tourist development tax revenues for facilities owned and operated by not-for-profit organizations. Had the Legislature intended to limit the use of the revenue to county-owned facilities, it could easily have done so. The language of section125.0104(5)(a)1., Florida Statutes, however, only requires that a facility be either publicly owned and operated or owned and operated by a not-for-profit organization and open to the public, and that the facility be located in the county or in the subcounty special taxing district in which the tax is levied.
According to your letter, the county would acquire the property, using tourist development tax revenues. The county would then either transfer or lease the property to the state as the location of the State Agriculture Museum.[4] In light of the above, it appears that the use of tourist development tax revenues to acquire land within the county that would then be used by the state as the location for the State Agriculture Museum would not violate section 125.0104(5)(a)1., Florida Statutes.
Question Two
Section 212.055(2), Florida Statutes, authorizes the governing body of a county to levy a discretionary sales surtax pursuant to an ordinance enacted by a majority of the county electors voting in a referendum on the surtax.[5] A statement that includes a general explanation of the projects to be funded by the surtax is to be placed on the ballot.[6]
The funds raised by the local government infrastructure surtax and any interest earned thereon must be expended within the county to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources.[7]
The statute prohibits the use of the proceeds and any interest earned thereon "for operational expenses of any infrastructure[.]"[8] The term "infrastructure" is defined to mean:
"a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of public facilities which have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.
b. A fire department vehicle, an emergency medical service vehicle, a sheriff's office vehicle, a police department vehicle, or any other vehicle, and such equipment necessary to outfit the vehicle for its official use or equipment that has a life expectancy of at least 5 years."[9]
Thus, the definition of "infrastructure" includes expenditures not only for the construction or improvement of public facilities having a life expectancy of five years or more, but also the land acquisition or improvement costs related thereto.
An examination of the legislative history surrounding the enactment of section 212.055(2), Florida Statutes, indicates that the statute was enacted to provide a means of meeting the tremendous strains placed upon the infrastructure of local governments by the influx of people moving into this state.[10]
Thus, the statute, which authorizes a county to impose a surtax to address those strains, would appear to require that such surtax revenues be used to meet the county's infrastructure needs.
Accordingly, while the acquisition of land is included within the term "infrastructure" as defined for purposes of section212.055(2), Florida Statutes, it appears that the county must make a determination that such expenditure serves a county purpose.[11]
The determination as to whether an expenditure serves a public purpose, however, is one that must be made by the governing body of the county.[12]
Question Three
Section 125.38, Florida Statutes provides in pertinent part:
"If . . . the state or any political subdivision or agency thereof . . . should desire any real or personal property that may be owned by any county of this state or by its board of county commissioners, for public or community interest and welfare, then the . . . state or such political subdivision, agency, . . . may apply to the board of county commissioners for a conveyance or lease of such property. Such board, if satisfied that such property is required for such use and is not needed for county purposes, may thereupon convey or lease the same at private sale to the applicant for such price, whether nominal or otherwise, as such board may fix, regardless of the actual value of such property. The fact of such application being made, the purpose for which such property is to be used, and the price or rent therefor shall be set out in a resolution duly adopted by such board. In the case of a lease, the term of such lease shall be recited in such resolution. No advertisement shall be required."
In Attorney General Opinion 71-49, this office stated that the state may accept as lessee long-term leases on county or municipal owned property and expend state funds for the construction of buildings thereon.
Accordingly, the foregoing statute authorizes the county to lease or sell to the state for a nominal amount property owned by the county but not needed for county purposes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 125.0104(1), Fla. Stat. (1994 Supp.), as amended by Chs. 95-133, 95-147, 95-304, 95-360, and 95-416, Laws of Florida.
[2] See, s. 125.0104(3)(a), Fla. Stat. (1994 Supp.), as amended, stating that it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 94-12 (1994), 87-16 (1987) and 83-18 (1983).
[4] Cf., s. 125.38, Fla. Stat. (1993), discussed in Question Three of this opinion.
[5] Section 212.055(2)(a)1., Fla. Stat. (1994 Supp.), as amended by Ch. 95-258, Laws of Florida.
[6] Section 212.055(2)(b), Fla. Stat. (1994 Supp.), as amended.
[7] Section 212.055(2)(d)1., Fla. Stat. (1994 Supp.), as amended. Such funds may also be used to finance the closure of county-owned or municipally owned solid waste landfills that are already closed or are required to be closed by order of the Department of Environmental Protection.
[8] Id.
[9] Section 212.055(2)(d)2., Fla. Stat. (1994 Supp.), as amended.
[10] See, House of Representatives Committee on Community Affairs Staff Analysis CS/CS/HB 1421 (codified as s. 212.055), dated June 8, 1987.
[11] Cf., s. 125.01(1)(r), Fla. Stat. (1993), authorizing counties to levy and collect taxes for county purposes and for providing municipal services within any municipal service taxing unit; Art. VII, s. 10, Fla. Const.; Op. Att'y Gen. Fla. 79-84 (1979) (county taxes may be expended only for county purposes).
[12] See generally, Ops. Att'y Gen. 90-78 (1990); 86-44 (1986); and 84-76 (1984).